### MRS. GEORGE FINBERG ET AL. V. MRS. KATE L. GILBERT.

#### No. 2128. Decided November 29, 1911.

**1.—Location—Survey.**

The fact that the location of a land certificate was made without actual survey or marking of boundaries does not necessarily render the location void; but it is necessary to its validity that its location can be ascertained by a survey made in accordance with the calls given for locating it. Rules for determining location and boundaries where such calls are conflicting or indefinite and no actual survey was made in locating, stated. (Pp. 546, 547.)

**2.—Same—Land Office Map—Evidence.**

A location which, from the calls given, can only be ascertained by finding a corner of another survey called for by it, in a block of 79 sections, such corner called for being only ascertainable by running the lines of connecting sections numbered from 1 to 70, in the same block, can not be proven by the production in evidence of land office maps made many years after the location in question, nor by proof of survey on the ground to determine the location, made in accordance with such maps. The maps not being in existence when the location was made, and the field notes of the intermediate sections from an established beginning point not being produced to show the connection and relation of the various sections as located, neither such maps nor surveys made in accordance with them were legal evidence to establish the location of the section in controversy, the location of the entire block being not by actual survey, but by office location. The calls in the field notes of all the connecting sections, with their courses, distances and connections, should be shown, the result of a survey in accordance with them, not in mere accordance with a map indicating same only by scale, being proper evidence to determine the location. (Pp. 547-550.)

**3.—Same.**

Such map might, it seems, be admissible as corroborative evidence merely, when the corner in question had been established by proper proof of the location of the connecting sections and survey of their lines, courses and distances; but it was inadmissible to make even a prima facie case in the first instance. (Pp. 548-550.)

**4.—Cases Distinguished.**

Boon v. Hunter, 62 Texas, 582; Huff v. Crawford, 89 Texas, 214; Lilly v. Blum, 70 Texas, 704; Houston & T. C. R. Co. v. Bowie, 21 S. W. 304; Myers v. Moody, 122 S. W. 920; distinguished. (Pp. 548, 549.)

Error to the Court of Civil Appeals, Fourth District, in an appeal from Uvalde County.

Mrs. Gilbert sued Mrs. Finberg and others for the recovery of land, and had judgment. Defendants appealed, and on affirmance procured writ of error.

*Martin, Old & Martin, G. B. Fenley* and *Clark, Bliss & Lytle,* for plaintiffs in error.—The court erred in his conclusion that the evidence shows the land owned by plaintiff covers the land described by metes and bounds by established corners as described in the petition and in the judgment, because the only testimony and proof before the court was such as was erroneously admitted over the objection of defendants. Rev. Stats., arts. 4144, 624; Anderson v. Stamps, 19 Texas, 465; McGown v. Schrimpf, 21 Texas, 21; Stafford v. King, 30 Texas, 270; Hurt v. Evans, 49 Texas, 317; Gilbert v. Harris, 109 S. W., 392; Jordan v. James, 115 S. W., 873; Mann v. Taylor (N.

C.), 69 Am. Dec., 750; McAfferty v. Conover (Ohio), 70 Am. Dec., 57; Meredith v. Pickett, 9 Wheat, 573; Balance v. Papin, 19 Howard, 342; Thompson v. Shannon, 9 Texas, 537; Dalby v. Booth, 16 Texas, 565; Scott v. Pettigrew, 72 Texas, 322; Fulcher v. White, 48 S. W., 881; Blackwell v. Coleman Co., 94 Texas, 216; 5 Cyc., 967 to 969; Keller v. Hollingsworth, 78 Texas, 655; Jackson v. Cable, 27 S. W., 203; Kuechler v. Wilson, 82 Texas, 646; Caldwell v. Center (Cal.), 89 Am. Dec., 131; Mackay v. Armstrong, 84 Texas, 173; Moore v. Riley, 68 Texas, 670; Schaeffler v. Berry, 62 Texas, 714; Tyler on Boundaries, 28, 29, 122, 123, 159, 164, 165, 166, 283, 286; Faris v. Phelan, 39 Cal., 612; 4 Leading Cases Am. Real Prop., 362-382; 1 Jones on Real Property, secs. 320, 325, 327, 335, 339, 341, 342, 344, 388, 419; Burns v. Martin (Mich.), 7 N. W., 19; Connor v. Weik, 116 S. W., 650; Maddox v. Fenner, 79 Texas, 286; Isaacs v. Texas Land Co., 99 S. W., 1040; Grace v. Walker, 95 Texas, 39; Missouri, K. & T. v. Anderson, 81 S. W., 784; Burt & B. L. Co. v. Wilson, 93 S. W. (Ky.), 906; 5 Cyc., 870, 871, 872, 875, 881, 884, 885, 886.

The evidence was utterly insufficient to show that survey No. 71 includes the land in controversy. The only locative call of said survey, as shown by the field notes thereof set forth in the patent, which was the only evidence introduced by appellee of the field notes, is a call to begin at the N. W. corner of survey No. 70, and no competent testimony whatever was introduced showing where said survey No. 70 is located on the ground. Anderson v. Stumps, 19 Texas, 465; Mann v. Taylor (N. C.), 60 Am. Dec., 750; McAfferty v. Conover (Ohio), 70 Am. Dec., 57; Brodbent v. Cooper, 100 S. W., 185; Maddox v. Fenner, 79 Texas, 286; Isaacs v. Texas Land Co., 99 S. W., 1040; Blackwell v. Coleman Co., 94 Texas, 216; Felcher v. White, 48 S. W., 881; Missouri, K. & T. v. Anderson, 81 S. W., 784; Burt & B. L. Co. v. Wilson, 93 S. W. (Ky.), 906.

The opinions of Williams and Hodges, who claim to have made a survey of No. 71 many years after the issuance of the patent, and the maps and sketches made many years after the issuance of the patent, were not admissible against appellants over their objection and were not entitled to be considered by the court in determining the issues in the cause. Brodbent v. Cooper, 100 S. W., 185; Felcher v. White, 48 S. W., 881; Blackwell v. Coleman Co., 94 Texas, 216.

The evidence of Williams and his blue print map marked "Exhibit A," was not a statement of any facts or fact competent to locate or to be considered in locating the lines of section 71 or of any other section in said block 3, or of any other land shown to be connected with the same, but is only a statement of conclusions of the witness without informing the court upon what facts or supposed facts he based his conclusions; and said sketch or blue print map referred to is only evidence of the construction of lines constructed from his conclusions as given above, and is not evidence of any probative fact. Anderson v. Stamps, 19 Texas, 465; McAfferty v. Conover, 70 Am. Dec., 57; Jordan v. James, 115 S. W., 873; Caldwell v. Center, 89 Am. Dec., 131; Mann v. Taylor, 69 Am. Dec., 750; Burt & B. L. Co. v. Wilson, 93 S. W. (Ky.), 906; Brodbent v. Cooper, 100 S. W.,

185; Blackwell v. Coleman Co., 94 Texas, 216; Mackay v. Armstrong, 84 Texas, 173; Thompson v. Shannon, 9 Texas, 537; Hurt v. Evans, 49 Texas, 317; Fulcher v. White, 48 S. W., 881; Schaeffler v. Berry, 62 Texas, 705 and 714; Echals v. McKie, 60 Texas, 41.

*Webb & Goeth* and *Love & Williams,* for defendant in error.— That a location is not void because not originally surveyed on the ground, as the statute provides it shall be done, is clearly held in the following cases: Williamson v. Simpson, 16 Texas, 440; Stafford v. King, 30 Texas, 270; Boon v. Hunter, 62 Texas, 582; Groesbeck v. Harris, 82 Texas, 411; Texas & P. Ry. Co. v. Thompson, 65 Texas, 186.

When a given survey has none of its locative or descriptive marks on the ground so as to locate it, it may be located by reference to contiguous surveys, and by surveying by course and distance, and under such circumstances and conditions, course and distance become the controlling evidence, unless directly controverted by other calls in the instrument. Texas & P. Ry. Co. v. Thompson, 65 Texas, 186; Roberts v. Helms, 20 S. W., 1004; Phillips v. Ayres, 45 Texas, 602; Gilbert v. Harris, 109 S. W., 392; Gregg v. Hill, 82 Texas, 407; Duff v. Moore, 68 Texas, 270; Boon v. Hunter, 62 Texas, 582; Booth v. Upshur, 26 Texas, 70; Jones v. Andrews, 62 Texas, 662; Sanborn v. Gunter, 84 Texas, 297; Blum v. Bowman, 66 Fed., 886.

That official maps, or certified copies thereof, are admissible in evidence is held in the following cases, some of which hold that such maps are admissible whether made by original surveyor or not, and regardless of the fact that they were made long after the land was first located. Texas & P. Ry. Co. v. Thompson, 65 Texas, 186; Railway Co. v. Bowie, 21 S. W., 305; Fulcher v. White, 59 S. W., 628; Buford v. Bostick, 50 Texas, 376; Boone v. Hunter, 62 Texas, 589; Devine v. Keller, 73 Texas, 364; Myers v. Moody, 122 S. W., 920; Lilly v. Blum, 70 Texas, 712; Whitman v. Rhomberg, 25 S. W., 452; Huff v. Crawford, 89 Texas, 222; Houston & T. C. Ry. v. Bowie, 21 S. W., 305.

With the certified copies of official maps of the land, obtained from the State Land Office, to show the relative location, size, shape and position of said section No. 71, and with a competent surveyor testifying that he correctly made the survey and ran the distances east and south, as shown to be correct by said maps, and thus found the corner of said section No. 71, as claimed by defendant in error, we confidently contend that we did make out a prima facie case.

MR. JUSTICE RAMSEY delivered the opinion of the court.

This was an action of trespass to try title brought by Mrs. Kate L. Gilbert for the title and possession of section 71, in block 3, Texas Western Narrow Gauge Railway Company lands situated in Edwards County and described in her petition as follows: Beginning at the Northwest corner of survey No. 70; thence south 1900 varas to a stake; thence west 1900 varas to a stake; thence north 1900 varas to a stake; thence east 1900 varas to a stake, and which was averred to be thus more particularly described: Beginning at a rock corner

on a hill, the Southeast corner of this survey and the Northeast corney of survey No. 8 a rock marked N. W. 8 and S. E. 71, from which a cedar marked W. brs. S. 14¾ 114 varas; thence W. 1900 varas to a stake and mound and rock marked S. W. 71, from which a L. O. 5' dia. brs. N. 65 E. 11 vrs. a leaning L. O. 12' dia. brs. N. 20½ W. 13 4-5 vrs.; thence north 1900 vrs. a large rock mound marked N. W. 71; thence east 1900 vrs. a rock mound on north slope of hill, the Northeast corner of this survey, marked N. E. 71; thence south 1900 vrs. to the place of beginning. It was alleged that the field notes last above set out describe and include the identical land described in the field notes first given above. The defendants in the court below, plaintiffs in error here, answered by a general demurrer and disclaimed as to a small block of land consisting of fifty-six acres, minutely described in their answer and as to the demand and suit for the remaining portion of the land sued for they interposed a plea of not guilty. On trial before the court, without a jury, had in Uvalde County on the 31st day of March, 1909, judgment was rendered for Mrs. Gilbert for the land in controversy. This judgment was on appeal affirmed by the Court of Civil Appeals of the Fourth Supreme Judicial District, in an opinion therein rendered on January 5, 1910, and same is now before this court on writ of error for revision and review.

On the trial Mrs. Gilbert offered and there was admitted in evidence the following testimony and none other:

1. Patent from the State to the Texas Narrow Gauge Railway Company for 640 acres of land situated in Edwards County, Texas, known as survey No. 71, in block No. 3, on the waters of the Nueces River, about 12½ miles N. 63 E. from the junction of the E. and W. Nueces River by virtue of land scrip No. 0/100, issued by the Commissioner of the General Land Office November 17, 1875, and which in all other respects describes the land granted in accordance with the first description given of it above. This patent was dated April 8, 1876.

Defendant in error showed title in herself by mesne conveyances regular and sufficient to the land above described from and through the grantee in the patent. The precise date of her deed is not shown in the record, but it was filed for record on June 17, 1884.

Over the objections of plaintiffs in error Mrs. Gilbert was permitted to prove by George M. Williams, who it seems was a practical and skilled surveyor, that he had surveyed some of the surveys of block 3, Texas Western Narrow Gauge Railway Company. His testimony on this question is given in the statement of facts substantially in these words, after giving his age and residence: "I have been actually engaged in surveying for the last twenty-nine years. I was county surveyor of Tarrant County from 1882 to 1887. I was appointed State surveyor October, 1887, and with the exception of some five or six years I have held an appointment of State surveyor since 1887. All that time in the State of Texas. I have surveyed part of some of the surveys of block 3, Texas Western Narrow Gauge. I did the work in block No. 3 in the month of June, 1906 (but I don't remember the exact days of the month). I made a plot of the

block showing the work done by me; showing all corners and monuments as established by me; showing the relation of the monuments to the corners of the sections, that is to say, where I established a monument on a section line I showed the distance to the section corners. I also showed the bearing trees, marked them on the sketch and showed how the corners and monuments were marked. I have a blue print copy of my original map made at the office of the General Land Office at Austin, which I have looked over and to the best of my knowledge and belief it is a true blue print of my original map. This sketch is on too large a scale to be here reproduced, but in effect shows block 3 to be composed of eighty sections of land lying adjoining and west of certain Southern Pacific surveys, south of block O of Texas & New Orleans Railway surveys and north of block F surveyed for the Galveston, H. & S. A. R. R. Co. The plat shows Northeast corner S. E. of section 1 in block 3 to be identical with and located on the N. W. of section 71, S. P. lands. There is on the north a common division line, as appears from the map between block 3, Texas Western Narrow Gauge Ry. Co. and block O, of Texas & New Orleans Ry. Co. lands. There is also a common division line, as appears from said sketch, on the south between block 3 and block F., Galveston, H. & S. A. Ry. Co. lands. The plat shows the surveys from 1 to eighty, inclusive, to be of uniform size and directions and judging from the field notes of section 71 here in suit it is apparent that all the lines of all the surveys run due north, south, east and west. It is also apparent that if we may assume that section 1 of said block 3 is connected to and adjoins section 71, Southern Pacific, and that the common corner of such section is fixed on the ground and can be and was identified, then it is obvious from the facts above stated that by running nine miles west and six miles south from this point we arrive at the N. E. corner of section 71, block 3."

The defendant in error also introduced the testimony of the same witness to the effect, in substance, that in the spring of 1890 he had surveyed part of sections in block F of the Galveston, H. & S. A. Ry. Co. lands which adjoins block 3, Texas Western Narrow Gauge Ry. Co., on the south. This work, he says, was done for the land department of the Southern Pacific Ry. Co. At this time, according to his testimony, the S. W. corner of section 71, Southern Pacific Ry. Co., was well identified by the original bearing trees called for in its field notes, which were then standing and plainly marked. None of block 3 was at this time surveyed. There was also admitted in evidence, over objection of plaintiffs in error, a map of portion of Edwards County purporting to delineate the location of the blocks and surveys above referred to. This plat bears date and appears to have been compiled on April 14, 1900, which was certified to by the Commissioner of the General Land Office to be the official map then in use in the Land Office and to be an archive of same. It is in substantial harmony with the plat designated as Exhibit A above referred to. Defendant in error then offered in evidence the field notes of survey 71, Southern Pacific Ry. Co., lands, which are as follows:

"Survey No. 71, Field notes of a survey of 640 acres of land made for the S. P. Ry. Co. it being the quantity of the land to which they

are entitled, by virtue of script 17/399 issued by Jacob Kuechler, Comr. on July 1, 1872. Said survey is No. 71 in Edwards County situated on Waters of East prong of Nueces river about 13 miles north of the old Spanish Fort, Beginning at a stake on bank of Nueces river for N. W. cor. of No. 70 and S. W. Cor. of this survey from which a sycamore 6 in. dia. brs. S. 35 E. 11 vrs. Walnut 4 in. dia. brs. S. 21 E. 7½ vrs. Walnut 5 in. dia. N. 51 * 18 vrs. Thence South 85 E. at 380 vrs. cross road at a stake from which a pecan 6 in. dia. brs. S. 49½ W. 40 vrs. sycamore 8 in. dia. brs. S. 12 E. 63 vrs. 3871 vrs. to a stake and md. for S. E. cor. Thence N. 5 E. 950 vrs. to a stake and md. for N. E. corner. Thence N. 85 W. at 3583 vrs. a stake on road from which a pecan 4 in. dia. brs. N. 61½ E. 138½ vrs. 3733 to a stake on bank of Nueces river, from which a walnut 3 in. dia. brs. N. 39 E. 2½ vrs. sycamore 4 in. dia. brs. N. 52½ W. 9½ vrs. pecan 4 in. dia. brs. S. 32 W. 50 vrs. Thence along river bank S. 13¼ W. 960 vrs. to the place of beginning."

C. F. Hodges was then introduced, who, after giving his experience as a surveyor, testified that he surveyed section 71 in block 3 in April, 1893, and that in locating same he started at a corner of 71, Southern Pacific Ry. Co., lands on the Nueces River, and worked from a working sketch furnished him by the General Land Office, and then proceeded as follows: "I found one of the bearing trees called for in the field notes on the South line of the Ft. McKavit road which is 300 varas from the river; we traversed all the way from there and ran over to survey 20 of Block 12 at Leakey. From the point on S. line of S. P. Ry. Co. sur. No. 71, near the Nueces river, we ran to the S. E. corner of 71, S. P. Railway land, and there found a rock mound; we ran the South line of that survey according to course and distance, and after establishing its S. E. corner we ran from this clear back to the corner we had started from according to course and distance; we then ran all sorts of courses, on a traverse line, going in all about 15 miles East and 10 miles South, where we established a rock mound for what we supposed to be the S. E. corner of Survey 20 of Block 12. I was at that corner again in January, 1908, identified it and I then ran a line from that point 2 miles North and 3 miles West that brought us to what we took to be the S. E. corner or Survey 71 of Block 3 T. W. N. G. Ry. land; at that point we found a rock mound with cedar bearings; I think it was marked N. W. 8 and S. E. 71; I then ran one mile due West and found a rock mound with two live oak bearings; the rock was marked I think N. W. 7 and S. W. 71; I then ran one mile North and established a rock mound and mked it N. W. 71; I then ran East one mile and established another rock mound and marked it N. E. cor 71; I did not run the East line; the corners I found correspond with the corners referred to by Mr. Williams on his sketch marked 'A' for S. E. & S. W. corner of 71 and N. E. and N. W. cor of survey 7, Block F., G. H. & S. A.; in September 1908 I did some more surveying there; I then started from same place on the S. line of survey 71 S. P. land on the Ft. McKavit road; we ran a traverse line going from that point 7 miles South and 10 miles and 349 varas East; this

carried us to the corner established by Williams for the S. W. corner of Survey 71, Block 3; we ran 9 miles East from the S. E. corner of 71 S. P. Ry. Co. land and 7 miles South that carried us to the Williams corner." This work, he further says, was for the owners of the land, and was not official work. There was also offered in evidence a judgment in case of Kate L. Gilbert v. T. J. Godbold and W. A. Buchanan, to which the plaintiff in error was not a party, of date April 24, 1894, which we deem, on account of its lack of important probative force, unnecessary to here set out.

The defendant in error also offered in evidence a plat of a portion of the map of Edwards County, dated March, 1883, and certified to be an archive of the Land Office. It shows that section 1, block 3, ties onto section 71, Southern Pacific Ry., lands and locates the survey in suit as do the other maps and plats. Here the evidence closed, the plaintiffs in error offering no testimony.

The trial court filed conclusions of fact and of law, in which he found as a fact that neither section 71 of block 3, nor any of the many surveys included in that block, were surveyed and located on the ground, but were what is known as office surveys, and that originally there were no marked corners or lines to any of the surveys in said block 3, that Mrs. Gilbert was the owner of said section 71, block 3, and that said land is as last described in her petition, and that plaintiffs in error were in possession of same. The court from these conclusions of fact concluded that Mrs. Gilbert was entitled to recover and that said survey 71, block 3, was located on the ground at the place where she alleged same to be located and described in her petition. The sketches and plats contained in the statement of facts are so extended and elaborate that we can not here reproduce same, but we have undertaken above to state, in substance, what they show.

On the facts above set out many questions arise. The substantial question in the case, however, is: Does this evidence entitle Mrs. Gilbert to a judgment for the particular land, minutely described in her petition? To determine this question we may properly here state generally the evidence. It can not be doubted that Mrs. Gilbert showed title to section 71, block 3, Texas Western Narrow Gauge Ry. Co., land. The field notes of this survey called for section 70 of the same block. The field notes of this section are not offered in evidence. The field notes of section 71, Southern Pacific Ry. Co., lands were offered in evidence, but there is no call in these field notes for block 3, Texas Western Narrow Gauge, land, nor is there any reference in the field notes of the land in suit to section 71, Southern Pacific Ry. Co., survey, nor, indeed, any call for any exterior object except section 70, block 3. The patent to the land in controversy was issued on April 8, 1876. The earliest plat introduced in evidence was compiled in 1883. The others were made many years later. All the surveying done, until the last very few years, was done on private account, and of other blocks in which the location of the surveys in block 3 was but an incident.

The proposition asserted by defendant in error, and on which she

mainly relies to support the judgment in her favor is that official maps, though made subsequently to the location of the land in controversy, which have been officially adopted by the General Land Office and filed therein as archives of same are competent and admissible in evidence to prove the location, shape, size and position of the tracts of land which they delineate, and while not conclusive proof, constitute and make a prima facie case, which is sufficient, in the absence of any rebutting evidence, to sustain the judgment in her favor.

On the other hand, the plaintiffs in error contend that where a patent has been issued on a purely office survey the land purported to be granted by such patent can not legally be identified on the ground by maps made in the Land Office many years after the issuance of said patent, where it is not shown upon what data such maps were compiled or even that such data were in existence in the Land Office at the time of the issuance of said patent and such maps show no course and distance or any field notes whatever.

The facts that the several sections in block 3 were not in fact surveyed and marked on the ground does not render them void, nor is this, as we understand, claimed or contended for by counsel for Mrs. Finberg. This precise question came before this court in the case of Phillips v. Ayres, 45 Texas, 601, where Justice Moore, speaking for the court, said: "It was unquestionably the duty of the surveyor to make an accurate and exact survey of the land, as he represents himself to have done, to mark the lines where this could be done and to designate and call for the natural objects found by him in making the survey, and such artificial ones as he should make, which would be sufficient to locate and identify the survey as actually made upon the ground. (Buckley v. Bryan, Ky. Decis. Oct. Term, 1901, 91.) And until the contrary is made to appear, it is to be presumed the surveyor performed his duty. If, however, this presumption is rebutted or the contrary made to appear, it does not follow that the grant is invalid. (Stafford v. King, 30 Texas, 257, 94 Am. Dec., 304.) But in such a case the grant is to be designated and located by a survey to be made in conformity with the calls of the survey, as reported by the surveyor. If these calls are conflicting and contradictory, then preference must be given to those which, in their application to the grant in question, are more specific and definite, in place of such as are merely general and indefinite or descriptive. (Wright v. Mabry, 9 Yerg., 55.)" Nor can there any longer be any doubt as to the rules, in such cases, which are to govern courts in the location and identification of such grants. This was stated, with his usual clearness and masterful grasp by Judge Stayton in Boon v. Hunter, 62 Texas, 592, where he uses this language: "The rules for the determination of boundaries when a patent has been issued on a survey actually made have been so often stated that it is not deemed necessary to repeat them; and if it be not shown that no survey was made, such survey will be presumed.

"It is, however, not believed that the same rules in regard to the lines and corners of other surveys called for in a patent can be applied, when it clearly appears that no actual survey was ever made,

and in such case it becomes necessary to look to all matters of description contained in the patent, in order to determine what particular land was conveyed and intended by the State and the grantee to be conveyed by the patent. If, in such a case, from a consideration of all these, in connection with the facts surrounding the parties, and the transactions to which the parties looked at the time the patent was issued, the thing granted can be with certainty identified, then the grant ought not to be held void; but such matters of description as were evidently given by mistake should be disregarded, and effect given to the calls which are certain and are found, which, in connection with other matters of description contained in the grant, will make it conform to the evident intention of the parties. Booth v. Upshur, 26 Texas, 64; Urquhart v. Burleson, 6 Texas, 502; Hubert v. Bartlett, 9 Texas, 98; Booth v. Strippleman, 26 Texas, 436; Evans v. Weeks, 6 Rich., 85; Weakly's Lessee v. Wilson, 1 Overton (Tenn.), 377; Milling v. Crankfield, 1 McCord, 261; Shipp v. Miller, 2 Wheat., 316; Ralston v. McClung, 9 Dana, 338; Newsome v. Pryor, 7 Wheat., 8; Ferris v. Coover, 10 Cal., 624. In the last case many cases bearing on the question are considered." These rules, of course, are to be applied in consonance and harmony and in subordination to the principles enunciated by Justice Williams in the case of Blackwell v. Coleman County, 94 Texas, 216, where he says: "In determining the location of the land in such cases, the courts seek to ascertain the true intention of the parties concerned in the survey; but the intention referred to is not that which exists only in the mind of the surveyor. It is defined as that which may 'be gathered from the language of the grant,' or as 'the intention apparent on the face of the grant' (Hubert v. Bartlett, 9 Texas, 104), or 'the legal meaning of the language of the patent when considered in the light shed upon it by the acts constituting the survey.' Robertson v. Mosson, 26 Texas, 251; Robinson v. Doss, 53 Texas, 507; Brown v. Bedinger, 72 Texas, 247; Richardson v. Powell, 83 Texas, 591. When reference is made in the decisions to the intention of the surveyor, the purpose deduced from what he did in making the survey and description of the land is meant, and not one which has not found expression in his acts. Grants are issued by the State and accepted by the grantees upon the acts done by the surveyor in identifying and describing the lands, and the rights of both are to be determined by the legal effect of those acts and not by intentions which can not be deduced from a construction of the descriptions in the grants, with the aid of the facts constituting the surveys upon which they are based. Hence, if the intention of the surveyor appears from his field notes and his acts done in making the survey, his evidence to prove his intention is superfluous, while if it does not so appear, it can not control or affect the grant." Now, then, guided and instructed by these rules and principles thoroughly settled and established, let us recur to the facts and apply them to the case before us.

The field notes of section 71, Southern Pacific, survey does not call for block 3 or any survey in it, and in the nature of things could not do so because at the time such section was patented none of the surveys in block 3 had been located nor had the script, on which the

surveys in said last named block were located, at that time been issued. So that it is clear that the Southern Pacific survey 71 was located and surveyed without any possible reference to block 3.

Again, the survey in litigation calls to begin at the corner of survey 70 in block 3, and none of the other calls refer to any object, natural or artificial, by which the land attempted to be therein included can be identified. Where is section 70, and what are its calls? Is it located on the ground, and, if so, how? The record does not inform us. If such a general call for a corner of survey 70 can locate 71, then it would equally follow that the calls in 71 can locate 70. There is no call in the field notes of section 71 for any exterior line or corner of any portion of the Southern Pacific lands, nor are they in any way referred to, nor could it be known from the field notes of section 71, block 3, that there was such a survey as section 71, Southern Pacific, lands.

Again, it is to be noted that the map or plat made, if one was made, when those sections in block 3 were located and surveyed was not produced, nor did the parties produce and read in evidence the field notes of any of the more than threescore sections in block 3, extending back, and, by the later maps, purporting to connect with survey 71, Southern Pacific, lands; nor was it either shown or claimed that either such field notes or such maps and plats were inaccessible. The effort was made, however, to exhibit and show the location of the land sued for by certain maps above referred to, the first of which was compiled in 1883, some seven years after the location of the land in controversy and others more than twenty years thereafter and by certain work done many years after the original location. None of these maps were, of course, in existence when the land was located. No part of the work in the office or elsewhere of locating the sections in block 3 was done with reference to these later maps. The work of this later surveying was done from and on the basis of these maps furnished by the Land Office and depended for its accuracy on such plats. The burden rested on defendant in error not only to show title to the section of land in controversy, but especially in view of the detailed field notes contained in the petition, the location and situation of same and that it embraced the land claimed, and of which plaintiffs in error were charged to be in possession. This possession of Mrs. Finberg would defeat a recovery unless title was shown to the land claimed by Mrs. Gilbert. Nor do we think that the case of defendant in error is made out by the evidence of the surveyors. The work done by them was for other parties, not for the State, but in fact their surveys were of different and other blocks of land than block 3.

While subsequently made maps may, in some cases and under some circumstances, be admissible in evidence, we do not think that such maps alone are sufficient to prove the correct and true location of surveys therein delineated as against one in possession of the land sued for and particularly when from the whole case it is apparent that more direct and conclusive proof is in existence, and when properly analyzed we do not believe that any well considered case can be found which so holds. In Boon v. Hunter, 62 Texas, 582, it will be

noted that the maps were admitted by agreement of parties and that such sketch was in use in the Land Office *when* the *location* in controversy was made. In Huff v. Crawford, 89 Texas, 214, the court says that the surveyor intended to locate certain land as shown to be by the plat and data *"then* in the Land Office." In Lilly v. Blum, 70 Texas, 704, it appeared that at the time of the location the maps *then* in use in the Land Office showed the relative positions of the respective parties. Toudouze v. Keller, 118 S. W., 185, holds that when adjoining lots are conveyed in accordance with a plat *then* in existence, and presumably with reference to which the conveyance was made that the location of such lots may be fixed with reference to same. In Huff v. Crawford, 89 Texas, 215, it was held that a plat made at the time the land in controversy was located must govern as against one thereafter made. Nor is the case of Houston & T. C. Ry. Co. v. Bowie, 2 Texas Civ. App., 437, 21 S. W., 304, as we believe, in conflict with the views we have expressed, as seems to be thought by the learned counsel for defendant in error. The maps in that case were admitted, not to show the true location of the land sued for, but to establish the fact of a conflict. Bowie's heirs had shown title to the land and then offered the map in question to establish the fact that the land as claimed by the railway company, as shown by said map, conflicted with the land to which they had shown title. For this purpose and none other it was held to be properly receivable in evidence. The report of the case of Myers v. Moody, 122 S. W., 920, is not very satisfactory. The holding of the court goes only to the effect that maps and plats from the Land Office are admissible though not made contemporaneously with the date of the location of the different surveys. The court in that case says that the evidence satisfactorily showed that line to be where it was claimed to be by appellees. Again, the ruling of the court in that case went only to the question of the admissibility of this evidence and not as to its probative force. The case was one of boundary and it did not appear when the parties had acquired title with reference to the date of the maps in question.

It is not doubted that as to ancient maps and plats long and publicly recognized and with reference to which it may be fairly presumed that the parties, as well as the general public had acted, they may be and are admitted as in the nature of a species of reputation of the location of lots, streets and alleys or even of sections or leagues of land. Such was the rule laid down by the Supreme Court of the United States in Morris & Wynne v. Harmer's Heirs, 7 Pet., 554, 8 L. Ed., 784. The same rule was in effect laid down in Franklin v. Texas Savings & Real Estate Inv. Assn., 119 S. W., 1166. That was a boundary suit involving a small strip of land 15.2 feet at one end and some 5 or 6 feet at the other and about 1500 feet long. Obedience Smith was the common source. She sold ten acres of the land then owned by her in 1841, which altogether consisted of a league, to one Andrews. In 1855 a map purporting to be a subdivision of the Smith league was filed for record in Harris County. This map was dated in 1847 and purported to have been made by one F. J. Rothaas, acting city engineer and surveyor. It

is further stated in the opinion that this map was used by all surveyors and that Obedience Smith and her heirs recognized it as correct and it was in *defendant's* abstract of title. There was no objection made to the map and under the circumstances and facts stated it is obvious that it was properly receivable in evidence. But in this case it. is not shown with any certainty that any of the maps introduced in evidence were in existence when Mrs.° Gilbert· acquired the land in controversy and it is rendered certain that two of them were made many years after her deed was recorded. To sustain a judgment based on such testimony might, indeed, sanction the doctrine denounced by the Supreme Court of California in Payne v. English, 79 Cal., 540, 21 Pac., 952, of permitting a man who owned land to be "afterwards mapped out of it by other persons."

Numerous objections were made on the trial to the introduction of all the maps produced in evidence as well as to the testimony of the surveyors. We think that if and when the field notes of the different sections of block 3 are introduced and the location of section 71, Southern Pacific, is shown, that these subsequently made maps would be properly receivable in evidence, for whatever they might be worth as throwing light on or as corroborative of the location of the land in suit as originally fixed and placed.

The case seems not to have been fully developed, and it is obvious from what has been said that other testimony of a material character is available. We think, therefore, that the case ought not to be here rendered, but the judgment will be reversed and the cause remanded for further proceeding in accordance with law.

*Reversed and remanded.*