The STATE of Texas et al., Appellants,

v.

Stella Geaslin HORTON et al., Appellees.

No. 7139.

Court of Civil Appeals of Texas, Beaumont.

May 7, 1970.

Motion for Rehearing Overruled June 4, 1970.

Crawford Martin, Atty. Gen. of Texas, Austin, Jerry H. Roberts, Ass't Atty. Gen., Austin, for appellant.

James E. Faulkner, Coldsprings, Frank B. Gray, Houston, for appellee.

KEITH, Justice.

The State of Texas, the Attorney General, and the Commissioner of the General Land Office, appeal from an unfavorable judgment rendered in a non-jury trial in a case of trespass to try title. Plaintiffs sought to recover 223.13 acres of land in San Jacinto County, using the provisions of Section 6(j) of Article 5421c, Vernon's Ann.Civ.St., as a key to the courtroom door. Although the State assigns three points of error, our disposition of the cause makes it unnecessary for us to mention the latter two. The point which we sustain brings forward the complaint that plaintiffs failed to offer any proof of the fact that the premises described in their petition were within the bounds of the Miles G. Stephens Survey.

It appears that the plaintiffs established upon the trial of the cause, by mesne conveyances from the sovereignty of the soil into themselves, record title to the land described in their petition, *if the land in truth and in fact lies in the Miles G. Stephens Survey.*[1] The State does not challenge the evidence as to title, and we accept the court's finding thereon. The plaintiffs' petition disclosed that in 1944 one Womack had filed an application with the Commissioner of the General Land Office to purchase certain property which he alleged to be unsurveyed land belonging to the Public Free School Fund. He attached thereto his field notes and a plat. Further allegations were made by our plaintiffs that on September 17, 1946, the Commissioner held a hearing and "determined that the above described lands and other lands were in fact unsurveyed public school lands belonging to the Public Free School Fund," (i. e., a vacancy existed).

Plaintiffs alleged (but failed to offer proof) that they were not made parties to this determination and had no notice of the

---

1. All emphasis herein has been supplied unless otherwise indicated.

hearing nor did they have an opportunity to be heard thereon. It does appear, however, that at least two smaller areas of the so-called "Womack Vacancy" were patented to two good faith claimants, although such grantees were not made parties to the suit. These prior administrative proceedings were conducted under Land Office Scrap File No. 14598.

More than twenty years later, in April, 1965, the plaintiffs sought to become good faith purchasers of the land *remaining* in the "Womack Vacancy", their application being designated as Scrap File No. 16206. We note that the field notes and the plat attached to plaintiffs' application both specifically mentioned the prior proceedings.[2] The reference in the application to "S.F. 14800" was to the sale of 56.02 acres out of the "Womack Vacancy" to Carey Land & Development Company, et al, dated January 13, 1947, as mentioned in State's excluded Exhibits Nos. 14 and 15. The Commissioner of the General Land Office denied the application to purchase filed by the plaintiffs, such action not being shown specifically in our record, but is "assumed" by the parties.

In the petition, plaintiffs described the land involved in a manner completely different from that found in any of the instruments offered in evidence as forming plaintiffs' claim of title.[3] As a part of their proof, plaintiffs offered in evidence, without objection, a map from the archives of the General Land Office, prepared in 1872, showing various surveys in San Jacinto County, including the Miles G. Stephens Survey.

While the map was admissible in evidence, it did not, standing alone, establish the necessary fact that the land described in the petition was within the boundaries of the Stephens Survey. The rule governing such a situation is set out with clarity in this excerpt from Weatherly v. Jackson, 123 Tex. 213, 71 S.W.2d 259, 263 (1934), wherein the court said:

"As to the official maps in the General Land Office, they represent nothing more than the draftsman's and the Commissioner's opinions and conclusions from the records and other available information as to the location of the various surveys with reference the one to the

2. Plaintiffs' application to purchase described the land as follows: "Bounded on the S.W. by S.F. 14800 Bounded on the S.E. by Miles G. Stephens Survey Bounded on the N.E. by B. B. Stansel Survey And, bounded on the N.W. by the John R. Johnson, J. Schofield and Pedro Medina Surveys."

3. The field notes of the land were set out in the petition as follows:
"Approximately 223.13 acres of land in the Miles G. Stephens Survey in San Jacinto County, Texas, about 8¼ miles N20°W from Cold Springs, the County Seat of San Jacinto County, Texas, described by metes and bounds as follows:
"BEGINNING at the Northeasterly corner of the J. Schofield Survey, said corner being formerly known as the Northeasterly corner of the Neighbor Blanchet Survey, and being the Southernmost corner of the Pedro Medina Survey, which corner is located in the NW line of the Miles G. Stephens Survey;
"THENCE N 41° 36′ E along the NW line of the said Miles G. Stephens Sur-

vey and the Southeasterly line of the Pedro Medina Survey, 3868.3 vrs to a point for corner in the Southeasterly line of the Miles G. Stephens Survey, and a corner of the B. B. Stansell Survey, said point being the Northermost [sic] corner of the Miles G. Stephens Survey;
"THENCE S 49° 24′ E along the Northeasterly line of the Miles G. Stephens Survey 104.4 vrs to a point for corner;
"THENCE S 40° 44′ W 7598.25 vrs to a point for corner;
"THENCE N 48° 48′ W 235.15 vrs to the Southeasterly line of the John R. Johnson Survey, the same being the Northwesterly line of the Miles G. Stephens Survey;
"THENCE N 41° 51′ E along the Southeasterly line of the John R. Johnson Survey and the Northwesterly line of the Miles G. Stephens Survey past the SW corner of the J. Schofield Survey and the NE corner of the John R. Johnson Survey 3728.46 vrs to the PLACE OF BEGINNING."

other. As additional information about the facts on the ground is obtained, as, for example, from new field notes or reports of surveyors or judgments, the maps are corrected and changed, and from time to time it becomes necessary to compile new maps. It is held in Holmes v. Yates [122 Tex. 428], 61 S.W. 2d 771, that the Commissioner has the authority to correct mistakes in the records of the General Land Office on proper showings. So the conclusion or opinion of the Commissioner that the Roemer and Miller surveys adjoined as expressed by the maps of 1882 and 1919 was superseded by the Commissioner's later opinion and conclusion expressed by his action in approving the field notes of plaintiff in error's survey and awarding the land to him. Such maps, previously made from the information available when they were made, although they may under proper circumstances be admissible, cannot constitute evidence to rebut the presumption arising from the later action of the Commissioner in approving the survey and making the award.

"The conclusion last stated is supported by Finberg v. Gilbert, 104 Tex. 539, 141 S.W. 82, 87. There it was held that a judgment in favor of the defendant in error, upon whom rested the burden of proving that the land in controversy was within the bounds of a survey owned by him, was not supported by proof that official maps of the General Land Office so delineated the survey as to include the land within its bounds.

"It was further held that such official maps were admissible only for whatever they might be worth as throwing light on or as corroborative of the location of the land in suit as originally fixed in connection with the evidence as to the actual location."

The nineteenth century map was not competent proof that the lands described in the petition were within the Stephens Survey. We note that there is no "Neighbor Blanchet Survey" shown on the map, although mentioned in the pleaded description of the land. There is to be found in the petition an allegation that the boundaries of the tract begin "at the Northeasterly corner of the J. Schofield Survey [which does appear upon the map], *said corner being formerly know as the Northeasterly corner of the Neighbor Blanchet Survey* [which does *not* appear upon such map]." Plaintiff offered no proof from any source whatsoever to establish the fact, if it is a fact, that the "Schofield" and "Blanchet" corners were the same.

It is axiomatic that in a trespass to try title suit, the plaintiff must recover upon the strength of his own title, and we cite only two of the more recent cases by our Supreme Court upon this subject. From Hejl v. Wirth, 161 Tex. 609, 343 S.W.2d 226 (1961):

"It has long been the rule in this State that in a trespass to try title suit, the plaintiff must recover upon the strength of his own title. Kauffman v. Shellworth, 64 Tex. 179; Hovel v. Kaufman, Tex.Com.App., 1926, 280 S.W. 185; Davis v. Gale, 1960, Tex., 330 S.W.2d 610. If the plaintiff under the circumstances fails to establish his title, the effect of a judgment of take nothing against him is to vest title in the defendant. The rule is a harsh one, but it also has been well established as a rule of land law in this State. French v. Olive, 1887, 67 Tex. 400, 3 S.W. 568; Permian Oil Co. v. Smith, 1934, 129 Tex. 413, 73 S.W.2d 490, 111 A.L.R. 1152."

See also: Land v. Turner, 377 S.W.2d 181, 183 (Tex.Sup., 1964).

We do not apply the double standard in this suit involving the State, for as was said in State v. Stanolind Oil & Gas Co., 190 S.W.2d 510, 512 (Beaumont, Tex.Civ. App., 1945, error ref.):

"When the State authorizes a party to sue the State and becomes a party to

that litigation, it occupies the same position as any other litigant."

This last rule of law cited is, however, somewhat overly broad because there are certain other advantages which the State has over its citizens in this type of litigation. For instance, the Supreme Court in City of Galveston v. Mann, 135 Tex. 319, 143 S.W.2d 1028, 1034 (1940) said:

"The State is the source of all title to land in this State, * * * [and] * * * anyone claiming title to any particular portion of the State's property must show that the same has been segregated by some formal grant or purchase, and that it no longer forms a part of the State's public domain. [Citations omitted.] "

See also: State v. Jadwin, 85 S.W. 490, 491 (Galveston, Tex.Civ.App., 1904, error ref.), wherein it was said:

"The state showed that the land sued for was within its borders. It then, of course, devolved upon defendants to show that it had in some way parted with its title."

Hon. Fred Lange of the Houston Bar, in his valuable work, 3 Texas Practice, "Land Titles and Title Examination", § 236, 1967 pocket parts, p. 20, cites another advantage which the State has working for it, these being Mr. Lange's words:

"A factor which works against the landowner [in vacancy litigation] is the shifting of the burden of proof. The state can allege ownership in general terms by showing the area involved to be within the borders of the state. Then, in order to take the title out of the state one must show that the state in some way has parted with its title through patent or grant. * * * The major issue in this type of litigation concerns boundaries or the location of lines and corners *on the ground* in conformity with the original survey."

One of the more well-reasoned cases on the subject is that of Producers' Oil Co. v. State, 213 S.W. 349, 353 (San Antonio, Tex.Civ.App., 1919, no writ), wherein the rule was laid down in this manner:

"The burden of proof on the whole case does not shift, although the burden of introducing proof shifts back and forth according to affirmative issues. When the state shows that the land it sues for is situated within its borders, it makes a prima facie case, according to our decisions. The duty then devolves upon the defendants to show a grant from the state, *and that the land sued for lies within the boundaries defined in such grant.*"

In our case, the plaintiffs made no effort to locate the land described in their petition as being within the boundaries of the Stephens Survey. In a supplemental brief, State's counsel, commenting upon the allegations and the lack of supporting proof, posed this hypothesis which we adopt as our own:

"Had the field notes in Plaintiffs' Original Petition and in the Judgment of the Trial Court, in describing the 223.13 acres alleged to be in the Miles G. Stephens Survey made no reference to the alleged adjoining surveys and simply read as follows:

" 'Beginning * * * in the NW line of the Miles G. Stephens Survey;

Thence N 41° 36′ E along the NW line of said Miles G. Stephens Survey * * *, 3868.3 yrs. to a point for corner in the Southeasterly line of the Miles G. Stephens Survey, * * * said point being the Northernmost corner of the Miles G. Stephens Survey;

Thence S 49° 24′ E along the Northeasterly line of the Miles G. Stephens Survey 104.4 vrs. to a point for corner;

Thence S 40° 44′ W 7598.25 vrs. to a point for corner;

Thence N 48° 48′ W 235.15 vrs. to * * * the Northwesterly line of the Miles G. Stephens Survey;

Thence N 41° 51′ E along the * * * Northwesterly line of the Miles G. Stephens Survey * * * 3728.46 vrs. to the Place of Beginning.' "

[Contrast this description with that found in Fn. 2, supra.]

"Then and in that event, the proof submitted would probably have been sufficient to have sustained a judgment containing such field notes, for in such hypothetical situation we would truly have had what Appellees, as plaintiffs, erroneously contend this case to be, 'a simple title suit'. By the evidence submitted in this case the Appellees, as plaintiffs, would have shown, in such hypothetical case, title out of the sovereign for the entire grant made to Miles G. Stephens; they would have presented field notes showing the land to lie wholly within the original grant without having placed in issue its location in relation to other surveys; and they would have made some showing of a chain of title, the sufficiency of which not being questioned. However, in the case on appeal the Appellees, as plaintiffs, did not stop there; they included more; they, in effect, alleged that the line along the westerly side of the Miles G. Stephens Survey is not only the Northwesterly line of the Miles G. Stephens Survey, but it is also the Southeasterly line of the John R. Johnson, J. Schofield, and Pedro Medina Surveys and that this line runs to a corner of the B. B. Stansell Survey, thus alleging that there is no land lying between such surveys. It is in this respect that they have failed to come forward with any competent evidence to support their contention."

The peculiar type of suit with which we are concerned is a statutory proceeding in derogation of the rule that the sovereign may not be sued. Short v. W. T. Carter & Brother, 133 Tex. 202, 126 S.W.2d 953 (1939). The very statute under which the plaintiffs hailed the State into court provides the issues therein, this being the language of Section 6(j):

"Any person * * * aggrieved by any action taken by the Commission under the provisions of this Act * * * may institute suit in the District Court of the county where any part of the land is situated, but not elsewhere, *and there try the issues of boundary, title, and ownership of any alleged vacancy involved,* as well as the issues of the preference rights of such person * * "

And, we concede, that the plaintiffs may, if they can, prove that no vacancy in fact exists. State v. Stanolind Oil & Gas Co., supra.

■ Even so, the case was essentially still a boundary dispute, although the plaintiffs say in the very first line of their brief: "This was a straight, outright Trespass to try title Suit by the Appellees * * *." Under this record, it is our opinion that they labored under the burden of showing that the land which they claimed title to was actually within the Stephens Survey.

■ The State's plea of not guilty, in the absence of a special exception addressed thereto, was sufficient to raise the question of boundary. Smith v. Burroughs, 34 S.W.2d 364, 365 (Austin, Tex.Civ.App., 1930, error dism.). In Schiele v. Kimball, 113 Tex. 1, 194 S.W. 944 (1917) Chief Justice Phillips said:

"The test for determining whether a case is one of boundary is: Would there have been any case if there had been no question of boundary? If so, it is not a boundary case. If not, it is necessarily a boundary case, though it may involve questions of title. The determinative inquiry simply is: Does the whole litigation grow out of a question of boundary? Cox v. Finks, 91 Tex. 318, 43 S.W. 1."

See also, West Lumber Co. v. Goodrich, 113 Tex. 14, 223 S.W. 183, 191 (1920).

The rules with reference to pleading of a boundary dispute are set out with remarkable clarity in Shelor v. Humble Oil & Refining Co., 103 S.W.2d 207, 209 (Amarillo, Tex.Civ.App., 1937, error dism.), from which we take this quotation:

"The petition in a boundary suit should describe the land by metes and bounds, and this should be done by each party, *describing the lines by objects, if any, to be found on the ground.* Where the description in the field notes is doubtful, and the objects called for cannot be found on the ground, the pleadings should accurately describe the land as the lines actually exist, and allege that such description is correct. [Citations omitted.] "

In the posture of the case as made by the plaintiffs in this appeal under the provisions of Section 6(j), Article 5421c, the only issue involved was the location of the land upon the ground. The State did not assert title to the Stephens Survey, nor did it concede that the land described in the petition was within the boundaries of the Stephens Survey. The language found in State v. McHard, 432 S.W.2d 182, 184 (Houston, Tex.Civ.App. 14th, 1968, error ref. n. r. e.), although not exactly in point, is persuasive:

"The location on the ground of the land described in Plaintiffs' petition is dependent on the location, on the ground of the disputed common boundary. The trial court's judgment does not fix the location on the ground of such disputed boundary. Thus, the trial court's judgment is meaningless and fails to dispose of the controversy between the parties. Craig v. Mings, Tex.Civ.App., 144 S.W. 316, no writ hist."

See also, Hancock v. Bennett, 230 S.W.2d 328, 329 (Waco, Tex.Civ.App., 1950, no writ), and Leone Plantation, Inc. v. Roach, 187 S.W.2d 674, 676 and 681 (Waco, Tex.Civ.App., 1945, no writ).

 Plaintiffs had the burden of coming forward with competent evidence to support their allegations of a common boundary, or of no vacancy, and failed to produce any evidence whatsoever on the point. They wholly failed to produce any evidence showing that, on the ground, there was a common boundary, or that the described premises lie within the bounds of the Miles G. Stephens Survey. Further, there is no evidence in the record from which a presumption to such effect could be drawn. Having failed to establish title to the particular land sued for, plaintiffs could not prevail in the trespass to try title action. Hejl v. Wirth, supra.

Reversed and rendered.