JOHN WOODS v. J. M. ROBINSON.

(Case No. 1499.)

1. GRANT — CONSTRUCTION.— The rules for the construction of grants, and for ascertaining their boundaries, are all designed to carry out the intention of the grantor; when that intention is manifest all else must yield to and be governed by it.
2. DIGNITY OF CALLS.— A call for an old marked line established on the ground, when the survey which calls for it was made, will control a call for distance.
3. SURVEY.— Where a survey calls for adjacent grants that bound it, without dispute, upon four or more sides, and where five of the corners of such survey are established, the boundaries of such survey must be determined by the calls for the previous adjacent grants, and by a line run so as to establish the sixth and last corner as called for in the grant, and from that corner run the closing lines, disregarding both course and distance, if absolutely necessary, so as to embrace within the lines of the patent all of the land lying between the adjacent surveys called for in the patent as constituting the outer boundaries of the grant.
4. SAME — DIGNITY OF CALLS.— A call for a corner which is ascertained by marked lines intersecting at such corner, will prevail over a call for distance. Buford v. Gray, 51 Tex., 331, followed.

ERROR from Lavaca. Tried below before the Hon. Everett Lewis.

The following plot of the J. C. Neil survey, and of the older surveys surrounding it when it was made, and for which its field notes called, is all that is needed to a proper understanding of the opinion:

*M. V. Kinnison*, for plaintiff in error.

I. The first class of calls which control surveys are natural objects, such as creeks, rivers, mountains, etc.; the second, artificial objects, such as marks, entries, marked lines, etc.; the third, course and distance. Bolton *v.* Lann, 16 Tex., 110; Booth *v.* Strippleman, 26 Tex., 443; Booth *v.* Upshur, 26 Tex., 70. But a correct location consists of an application of any or all these rules to the particular case, and when they lead to contrary results, that must be adopted most consistent with the intention on the face of the grant. Hence there are many cases where course and distance will control natural marks and boundaries; as where it appears that these were inserted by mistake, or were laid down by conjecture and without regard to rule. Booth *v.* Upshur, 26 Tex., 67; Booth *v.* Strippleman, 26 Tex., 441. There is no controlling call in a grant. Booth *v.* Upshur, *supra*. Certainly a lost call cannot control. Bass *v.* Mitchell, 22 Tex., 294.

II. If it be true that the original surveyor of the Neil survey extended actually the north line of said survey to the Horton east line, then he must have done so without regard to rule; for following the rules, he would then have been compelled to run his next line (the direction of which was south) into and through the Daniels league, the oldest survey in that section, and surely no surveyor could have been guilty of such an absurdity; and even then could not have reached the beginning point of the Neil survey. The resurvey of the J. C. Neil by the witness H. H. Russell, and the planting of the rock for corner opposite the beginning corner of said survey, makes a line which reaches the said beginning corner, and which being still further extended, is a prolongation of the east line of the Daniels or the west line of the J. B. Alexander, and until it reaches the Lavaca river. This reconciles all the lines, boundaries, etc., of all these old surveys, produces no conflict, and is, we respectfully submit, a proper survey under all the circumstances.

No brief for defendant in error has reached the Reporter.

West, Associate Justice.— This is a suit brought by plaintiff in error to recover thirty-six and two-thirds (36⅔) acres of land, patented in April, 1881, and to which he has a chain of title.

The defendants claim that the land at and long before the date of plaintiff's patent had been granted to J. C. Neil's assignee, under whom they hold. There is no question as to the mesne conveyances of either party. The case was tried without a jury.

The patent to J. C. Neil's assignee, under whom the defendants claim, was issued on January 21, 1858, and that of Spence, under whom the plaintiff claims, in April, 1881. As, all other things being equal, the elder grant must prevail, the vital question, then, is, were the thirty-six and two-thirds (36⅔) acres in suit inclosed within the ambit of the Neil survey when plaintiff's patent issued? If it was, then the judgment of the court below, which answers the question in the affirmative, was correct; if not, it must be set aside.

The field notes of the Neil survey call to begin at the northwest corner of the J. B. Alexander survey, which has as its northwest corner a known and established point in the Daniels east line, on which the Neil survey corners. Its south line is in part common to it and the J. B. and Samuel Alexander surveys. This south line is also well known, and its second corner, being its southeast corner, is carefully marked by bearing trees, etc., and is found on the ground and is called for at the point where this south line of the Neil survey intersects the east line of the Lyons survey, also a survey whose lines and corners are known. It then runs north with the Lyons east line to the southeast corner of the P. Price survey, where was established a corner common to the Neil and Price surveys, and on the Lyons east line, and also known. The line then runs west with Price's south line until it reaches Price's southwest corner, which is also known. It then runs north with Price's west line until it strikes Price's northwest corner, which is also carefully marked with bearing trees, etc., and well known, and is the point where this line last mentioned, being a line common to the Price and Neil surveys, intersects the south boundary line of the Woods grant of three-fourths (¾) of a league, being an old and well-defined survey, cultivated and occupied for twenty-five or thirty years past, with its west line and corners all well known or very easy to be ascertained. From this last-named well known point in the south line of the Woods survey the Neil line runs west according to the calls of the patent, until it strikes the east line of the Horton survey, and there it has a corner in common with the Woods grant. This last line is in the prairie, but the patent calls for the corner in the east line of the Horton survey, giving course and distance, and this east line of the Horton, which is also the west line of the Woods survey, is a marked line, and is well known and easily found, and for many years fences have been built and farms laid out and inclosed with reference to its known locality, and the line can be easily traced on the ground, and the point where the Neil north line intersects it is capable of ascertainment. From this point, being the northwest corner of the Neil

survey, the patent·calls for a line running south with the Horton
and Daniels east line to the beginning point of Neil's grant,
which, as was said before, is at the northwest corner of the J. B.
Alexander survey on the east line of the Daniels grant. The small
strip of thirty-six and two-thirds ($36\frac{2}{3}$) acres in controversy lies in
the northwest corner of the Neil survey. In running the north line
of the Neil survey from Price's northwest corner, along the south
line of the Woods grant, the call for distance is exhausted, not only
before the corner in Horton's east line is reached, but even before a
point is reached in Woods' line, which would be opposite the begin-
ning point of the south line of the Neil survey. This north line of
the Neil survey being in the prairie, and of course unmarked, and
the corner also undesignated by any natural object, the plaintiff
contends that the northwest corner of the Neil grant, instead of
being established on the Horton east line as called for in the patent,
the call for distance in the grant being more than exhausted, and
the southwest corner itself not found, and the Horton east line not
reached, must be established in the prairie at a point opposite its
original beginning corner, where the Daniels east line, which is also
called for in the grant as part of the west line of the Neil survey,
if extended in a northerly direction, would intersect the south line
of the Woods grant at a point in the prairie where the plaintiff
seeks to fix the northwest corner of the Neil grant.

The Neil survey is then closed, according to this theory of the
plaintiffs, by running a line south, disregarding entirely the call in
the Neil grant for the Horton east line, until the Daniels east line
is reached, and then following the Daniels line, also a well-known
line, to the point of beginning at J. B. Alexander's northwest cor-
ner. If this is done, the calls in the Neil patent for its northwest
corner in the east line of the Horton grant will be disregarded, as
well as the call in the patent for the Horton east line as constituting
a part of the west boundary line of the Neil grant. From this it
would result that the small strip in controversy will be outside the
boundaries of the Neil survey and would·belong to plaintiff. The
reason given by the plaintiff in error for insisting on the location of
the ground of the Neil survey in this manner, is that by it the Neil
grant gets its full complement of land, and the survey closes prop-
erly and lawfully, whereas, if it is. extended according to the calls
of the patent to the Horton east line, not only the call in the grant
for distance must be disregarded, but that on running south along
the Horton east line, instead of striking the Daniels east line as
called for and then running with it according to the patent, we will

in fact strike the Daniels north line, which is not called for in the grant, at a point on that line two hundred and three (203) varas distant from the Daniels east line which is called for, and by continuing the course and distance called for in the grant south, the line so run will disregard the call of the grant for the Daniels east line, and will throw the Neil grant in conflict with the Daniels grant, and will exhaust itself on that survey, and will never reach either the Daniels east line or its own beginning corner, but will terminate at a point within the Daniels grant two hundred and three (203) varas west of the actual beginning corner of the Neil grant, which had already been ascertained and established on the ground at the northwest corner of the J. B. Alexander survey.

This is the only difficulty that exists in locating the Neil survey on the ground. It arose evidently from the fact that the surveyor, when establishing the Neil north line in the prairie, without probably tracing that line west beyond Price's well-known northwest corner, assumed that the Horton east line was really nothing more than a continuous extension of the old Daniels east league line from its beginning point on the Lavaca river back in the prairie to the termination of the Horton east line.

It seems, however, from this record, as a matter of fact, that the Horton east line is two hundred and three (203) varas west of the Daniels east line, and hence the apparent difficulty in closing the Neil survey according to the calls in the patent without bringing it into conflict with the Daniels league.

What rules of law, then, shall be applied to the facts in order to locate properly on the ground the Neil survey, for on its true location the whole case turns? The calls on the face of the Neil patent are such that to fulfil them all, the land inclosed within its metes and bounds must have corners and lines in common with the J. B. & S. Alexander, Lyons, Price, Woods, Horton and Daniels grants. This is apparent from the calls in the patent itself. It was clearly, from the terms used in that instrument, the purpose of the state to grant to Neil or his assignee all the land contained within the space between the boundaries of the seven above-named surveys, all of which were grants from the state, and their relative positions to each other on the ground known and well defined, when the Neil patent was issued.

The rules for the construction of grants, and for ascertaining their boundaries, which have from time to time been announced by the court and have been acted on in establishing their lines, are all designed for the purpose of carrying out the intention of the grantor.

When this intention is once made manifest, all else must yield to
and be governed by it.   Robertson v. Mosson, 26 Tex., 248; Swisher
v. Grumbles, 18 Tex., 164.

The question here is, whether this survey ought not to be closed
in the manner contended for by plaintiff, and the call in the Neil
patent for a corner on the Horton east line disregarded and its true
northwest corner established in the prairie at a point two hundred
and three (203) varas distant from that line?   If at the time of the
grant to Neil, the Horton east line had never been run, or if it had
not been marked and identified on the ground at that date, then
the call in the patent for course and distance from the well-estab-
lished northwest corner of the Price grant would prevail over the
call for a mere hypothetical or imaginary line in the prairie.   Booth
v. Strippleman, 26 Tex., 436.   But this is not at all the case here; the
Horton east line is no imaginary line, but was an old line actually
marked on the ground when the Neil patent was issued, and its
location and close proximity to the line then being established was
undoubtedly in the mind of the surveyor of the Neil land, who was
then the authorized agent of the government employed to ascertain
its location; and though this northwest corner itself was not in
fact established on the ground, yet the fact that it was at the
point in this old marked line where an extension of the boundary
line common to the Woods and Neil grants would intersect it, made
it very easy of ascertainment.

Under such circumstances, for the purpose of carrying out the
intention of the grantor, this call for the Horton line must con-
trol the call for distance, the last being in fact the weakest and
most unreliable of all the classes of calls.   McCown v. Hill, 26 Tex.,
359; Stafford v. King, 30 Tex., 257.

Another rule of law that is also applicable to the facts of this
case is, that where a survey calls, as does the Neil survey, for the
adjacent grants that bound it, without dispute, upon four or more
sides, and where five of the corners of such survey are established,
the boundaries of such survey must be determined by the calls for
the previous adjacent grants, and by a line run so as to establish the
sixth and last corner as called for in the grant, and from that corner
run the closing lines, disregarding both course and distance, if abso-
lutely necessary, so as to embrace within the lines of the patent all
the land lying between the adjacent surveys called for in the patent
as constituting the outer boundaries of the grant.   Jones v. Bur-
gett, 46 Tex., 285; Duren v. Presberry, 25 Tex., 512; Anderson v.
Stamps, 19 Tex., 460; Johns v. Schultz, 47 Tex., 579.

A call for a corner, which is ascertained by marked lines intersecting at such a corner, will prevail over a call for distance and quantity.   Buford *v.* Gray, 51 Tex., 331.

Applying these rules to the case in hand, the district judge rightly held that the lands claimed by plaintiff under the patent to Spence had been previously appropriated, and constituted a part of the land inclosed within the limits of the grant to Neil.   The judgment is affirmed.

AFFIRMED.

[Opinion delivered February 6, 1883.]