HOUSTON OIL CO. OF TEXAS v. LANE et al. (No. 283.)

(Court of Civil Appeals of Texas. Beaumont. April 27, 1918. Rehearing Denied May 15, 1918.)

1. TRESPASS TO TRY TITLE &#9758;41(3) — EVIDENCE.

In trespass to try title, evidence *held* to support a jury finding that a certain tract was located as claimed by defendants and interveners.

2. TRIAL &#9758;352(1)—AMBIGUOUS QUESTIONS.

In trespass to try title, a question submitted to the jury whether a certain tract was located as claimed by defendants and interveners was not objectionable as ambiguous.

Error from District Court, San Augustine County; A. E. Davis, Judge.

Suit by the Houston Oil Company of Texas against Wesley Lane and others, in which W. T. Lakey and another intervened. Judgment for defendants, and plaintiff brings error. Affirmed.

Kennerly, Williams, Lee & Hill, of Houston, for plaintiff in error. John F. McLauren and Davis & Ramsey, all of San Augustine, and Denman & Thomas, of Lufkin, for defendants in error.

BROOKE, J. This is a suit brought by plaintiffs in error in trespass to try title against defendants in error for a portion of the northwest quarter of the Wm. Lakey league in San Augustine county. Defendants in error disclaimed title to all the land sued for, except 100 acres and 246½ acres, and as to these two tracts pleaded not guilty, and specially pleaded limitation title of three, five, and ten years. W. T. Lakey and G. W. and Mary Robertson, interveners, set up title to a two-fifths interest in the 130-acre tract of the land sued for. A trial was had by jury on special issues, and a verdict favorable to defendants in error on all issues submitted was returned, and judgment was rendered by the court on such verdict that defendants in error recover all the land they sued for, except two-fifths of the 100-acre tract, and for the plaintiff in error for the

balance of the land it sued for except one-fifth of the 130-acre tract adjudged to intervener Robertson, and costs were taxed against defendants in error.

The issues submitted to the jury were as follows:

"Question No. 1: Is the Troy Lakey or Mary Lakey tract of 100 acres, more or less, located as claimed by the defendants and interveners? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered, "Yes."

"Question No. 2: Is the Z. W. E. Lane 210 acres of land located as claimed by the defendants? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered, "Yes."

"Question No. 3: Have the defendants, and those under whom they claim, had and held and claimed the 246½ acres of land described in their pleadings, and have peaceable and adverse possession and cultivate, use or enjoy the same, claiming under deeds duly registered and paying all taxes due thereon as the same accrued for a period of five consecutive years after the plaintiff's cause of action accrued and before the commencement of this suit? You will answer this question 'Yes' or 'No,' as you may find the fact to be."

To this question the jury answered, "Yes."

"Question No. 4: Did the defendants and those under whom they hold and claim have and hold peaceable and adverse possession of the 246½ acres of land described in their answer, cultivating, using or enjoying the same for a period of ten consecutive years after plaintiff's cause of action accrued and before the commencement of this suit, and taken and held under written memorandum of title, specifying and defining the boundaries of said 246½-acre tract, and such memorandum duly recorded in the office of the county clerk of San Augustine county? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered, "Yes."

"Question No. 5: Did defendants, and those whose estate they claim to have and hold, have and hold the peaceable and adverse possession of the 246½ acres of land described in their answer, and cultivating, using, or enjoying the same for a period of ten consecutive years after plaintiff's cause of action accrued and before the commencement of this suit? You will answer this question 'Yes' or 'No,' as you may determine the fact to be."

To this question the jury answered, "Yes."

[1] The first assignment complains of the action of the court in overruling the forty-first assignment as follows:

"The plaintiff moves the court to strike out the answer of the jury to question No. 1, as being without evidence to support it."

On the contrary, defendants in error contend:

"That is certain which may be made certain from statements contained in the description, and which may be identified from extraneous matters."

The description objected to reads:

"Bounded on the north by Matthew Cartwright land; thence east to the Blanchard land; thence alongside said Blanchard's line to Carroll Lakey's corner; thence to John Lakey corner, said tract to contain 100 acres of land."

Its location is shown by the Whitton map and the McLaurin map.

ABST. 24 - N.W. ¼ OF WILLIAM LAKEY LG.
SAN AUGUSTINE CO.

EXHIBIT A - McLAURIN MAP.

The 100-acre tract calls for the Cartwright land, which is admitted by all the surveyors to be well established and definitely located. W. H. Whitton testified that when he surveyed off the Mary Lakey 100-acre tract, being the tract in question, that George Lakey, the brother of J. Troy Lakey, and the husband of Mary Lakey, pointed out the 100-acre tract as between the Cartwright land the north line of the 210-acre tract, and east of the George Lakey tract; that Harry Polk and George and Carroll Lakey were present, and that they surveyed up to the Mary Lakey tract; and that George Lakey said that the Mary Lakey tract lay between the Cartwright land and creek. Enoch Lakey testified that he knew the Mary Lakey or Troy Lakey place; that it was east of Grandpa William Lakey's place; that the Cartwright land was north of it, and a prong of Caney creek was south of it; that the Mary Lakey place was between a half and three-quarters of a mile east of that road, meaning San Augustine and Jasper road, that is the old house place; that that place has been recognized as her place

by the Lakey family, and that he never heard of it being disputed; that Mary Lakey was the last person that he knew of that lived on the Mary Lakey tract; that she lived there until she married in 1871; also, he testified that Carroll Lakey lived south of Caney creek, and moved from there to Falls county, and that he came back and lived between the creek and the bayou; also, Uncle Noah Lakey lived there for some time; that John Lakey lived a little northeast of Grandpa Lakey's place; that he knew nothing of the Blanchard. J. W. Robbins testified that John Lakey claimed the 246½-acre tract; that he sold to Mr. Letney, and Mr. Letney sold to Mr. Lane. A. O. Raimes also testified that Carroll Lakey lived between Big creek and the bayou.

The record shows that there is practically no dispute about the Cartwright land lying north of it; also, the John Lakey and Carroll Lakey tracts lie south and east, and also its boundaries on the south and east are circumscribed, as shown by the testimony, by Big creek and Caney creek. Thus we have three boundaries, leaving only the east boundary line not proven with absolute certainty; the east line called for in the field notes being the Blanchard land, and it is admitted that no one knew anything about the Blanchard land. In the case of Snow v. Gallup, 57 Tex. Civ. App. 572, 123 S. W. 223, it appears that no lines were, in fact, proven, but by a process of elimination that is, by proof showing other tracts sold off, leaving a 500-acre tract for the court to determine that was the tract intended to be conveyed. Also in the case of Tompkins v. Thomas, 54 Tex. Civ. App. 440, 118 S. W. 581, the court supplied three lines, in order that the tract might include 400 acres and close.

There was evidence that Mr. Enoch Lakey, a grandson of William Lakey, positively testified that this 100-acre tract has always been recognized by the Lakey family, and that he never heard before of it being disputed. Therefore there was testimony upon which the verdict was rendered, and we are of opinion that it cannot now be called in question. The first assignment is overruled.

[2] The second assignment challenges the action of the court as error in submitting question No. 1, for the reason that as the same is submitted, it is ambiguous, in that it does not ask whether the location as claimed by the defendants and intervener is the original or any established location thereof, and that it is so worded as to probably leave in the minds of the jury the idea that the court is asking them whether the 100-acre tract claimed by the defendants and interveners as the Mary Lakey tract is the location thereof made by the surveyor McLaurin. Without further discussion, we are of opinion that there is no merit in this assignment, and it is overruled.

The third assignment complains of the action of the lower court in not sustaining the forty-fourth assignment, and plaintiff moves the court to strike out and set aside the answer of the jury to question No. 2, as being without evidence to support it. It is the contention that wherever the intention of the parties is apparent from the field notes or description, the court will supply a line in order to connect up the survey. The deed from J. H. Letney and wife to Z. W. E. Lane described the 210 acres as follows:

"Beginning at a white oak on the north side of Caney creek, known as the Doyne corner; thence up said creek with its meanders to the dividing line of said league and the Hulen survey; thence south to the south boundary line of the original line; thence west with said league line to the Ayish bayou; thence down said bayou to the mouth of Big creek; thence up said creek to the mouth of Caney creek to the beginning, containing 210 acres of land."

These field notes were made by W. N. Whitton for H. K. Polk in 1889, and the plaintiffs in error hold under said Polk the land it claims. The said field notes also call for and recognize the James Lakey 210 acres. The plats hereto attached will show the location of said 210 acres. See Tompkins v. Thomas, 54 Tex. Civ. App. 440, 118 S. W. 581; Woods v. Robinson, 58 Tex. 655; Buford v. Gray, 51 Tex. 331. It is also the contention of defendants in error that where, by the description given and by reversing the calls in the field notes, the missing call can be supplied, and the land identified, the field notes will be held to be sufficient. See Montgomery v. Carlton, 56 Tex. 431. What is said with reference to the first assignment applies also to this assignment, and it is overruled.

The fourth assignment claims that the court erred in submitting question No. 2, because it does not make clear to the jury whether the court is asking them about that location of the land purported to be conveyed by the deed from J. H. Letney to Lane, or whether the question asks merely whether the location they claim is the location of the 210 acres surveyed by Whitton. The deed from Letney to Lane was made in 1893, and filed January 10, 1894. This deed contains a description of the land. Tax receipts from the year 1894 down to the present are shown. The testimony of Robert Lane, J. W. Robbins, and A. O. Raimes, Joe Coleman, and Ben Miller show that the defendants in error and those under whom they hold had such possession, cultivated, and made such use and claim to the property as to mature a limitation title. There was no dispute as to this testimony. The assignment is overruled.

The fifth assignment calls in question the action of the court in submitting question No. 3, because the evidence did not show that the 210-acre tract claimed by defendant

is the land described in the deed to Lane, and for that reason they have not been claiming under a deed duly registered and duly describing said land. Without further comment, and finding no merit in the assignment, the same is overruled.

The sixth assignment challenges the action of the lower court as error in submitting question No. 4, because same asked the jury to pass on a question of law as to whether such possession as defendants may have had was taken and held under written memorandum of title, specifying the boundaries, as is required by the statute, when the undisputed facts show that the only character of written memorandum of title which the defendants have, defining the boundaries of said tract, consist of field notes which are neither such memorandum, as is required, nor duly registered, as is required.

The deed from Letney to Lane, in which the first tract describes the 16½ acres, which is a part of the 246½ acres, and the second tract therein describes the 210 acres, and the third tract, which is the Troy Lakey tract, which includes the 100 acres sued for by defendants in error, and also part of the 246½ acres sued for by plaintiffs in error, was in the same deed. All the said tracts are consolidated in one deed. The deed which consolidated all of said tracts was filed for record in 1894, and in our opinion sustains defendants in error's limitation title to all of such tracts. Therefore, without entering into a detailed discussion of the remaining assignments of error, and of the proposition that several tracts of land may be consolidated in a deed and possession thereunder by the grantee to any part extends his constructive possession to all, we are of opinion that the assignments of error from 6 to 14, inclusive, are without merit, and are therefore overruled. As to the consolidation of the tracts and possession thereunder, see 191 S. W. 345.

After a careful examination of the contentions made by plaintiff in error and by defendants in error, and an inspection of the record, we are of opinion that the lower court did not commit error in the trial of said cause, and that the plaintiffs in error have had a fair and impartial trial, and that the judgment of the lower court must be affirmed.

HIGHTOWER, C. J., was disqualified, and did not sit.