# RUTH v. CARTER–KELLY LUMBER CO.
### (No. 1339.) *

(Court of Civil Appeals of Texas. Beaumont. May 24, 1926. Rehearing Denied June 23, 1926.)

1. **Boundaries** ⬀3(6)—**Boundary of certain survey held to be line connecting two corners, which, with natural objects witnessing them, were as called for in patent.**

West boundary of certain survey *held* to be line connecting two corners, which, with natural objects witnessing them, were as called for in patent, though such location would make north and south lines shorter than indicated, since lines of survey actually marked on ground will control course and distance if they can be found, traced, and identified.

2. **Trespass to try title** ⬀38(1).

In trespass to try title plaintiff has burden to show location of his land.

3. **Boundaries** ⬀25—**Junior survey, undertaken to be located by calls for corners and lines of older and well-established survey, must be made to conform to lines and calls of such older survey, notwithstanding its own erroneous calls.**

Junior survey, undertaken to be located by calls for corners and lines of older and well-established survey, must be made to conform to lines and calls of such older survey, notwithstanding its own erroneous calls, especially when older survey contains in its own calls elements of complete description and identity.

---

⬀For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*For opinion on motions for rehearing and to disqualify one judge, see 286 S. W. 905.

**4. Boundaries ⬉11—State's intent in locating certain section to embrace all territory between certain older surveys will be given effect in determining its boundaries, notwithstanding wrong or conflicting calls.**

State's intent in locating certain section to embrace all territory between certain older surveys will be given effect in determining its boundaries, notwithstanding wrong or conflicting calls, since when grantor's intention is manifest all else must yield to and be governed by it.

**5. Boundaries ⬉3(6).**

Call for corners of older surveys established, on ground when survey which calls for them was made, will control call for. distance.

**6. Boundaries ⬉54(1)—Discrepancies and errors in calls of survey of wooded country, in which many corners were called for without witness trees, held to indicate that it was office survey.**

Discrepancies and errors in calls of survey of wooded country, in which many corners were called for without witness trees, and one of largest creeks was not called for, *held* to indicate that it was office survey.

Appeal from District Court, Angelina County; C. A. Hodges, Judge.

Trepass to try title by the Carter-Kelly Lumber Company against G. B. Ruth. Judgment for plaintiff, and defendant appeals. Affirmed.

Tom F. Coleman, of Lufkin, for appellant.
Mantooth & Denman, of Lufkin, for appellee.

O'QUINN, J. This was a suit brought by appellee against appellant in the form of trespass to try title to section 9, block 3, Texas & New Orleans Railroad Company survey in Angelina county, Tex., but, in fact, the suit is one of boundary, the only question in the case being the true location of the west boundary line of the John Leonard survey owned by appellant, the same being the east boundary line of said section 9 owned by appellee. The case was tried before the court with the aid of a jury, but at the conclusion of the evidence the court instructed a verdict for appellee, which was returned and judgment accordingly entered. Motion for a new trial was overruled, and the case is before us on appeal.

It appears that the controversy arose by reason of cutting timber west of where appellee contends the common line is, appellant insisting that said line was some 210 varas further west than where appellee locates it. The disputed strip contains some 35½ acres. The contention of the parties may be stated thus: Appellant claims that the west line of the Leonard extends west 950.4 varas from the southeast and northeast corners of said Leonard. The appellee insists that the north and south lines of the Leonard are short and must stop at the southwest and northwest corners as established by natural and artificial objects and by course.

As above stated, appellant owned the John Leonard survey. It was surveyed August 16, 1872, and patented December 16, 1876. The field notes as called for by the patent are:

"Said survey is situated in the above-named county and state (Angelina county, state of Texas) on Shawnee creek, a tributary of the Neches river about 18 miles S. 36 E. from Homer. Beginning 1,440 vrs. north from the S. W. corner of a ¼ league survey in name of William Johnson, a stake from which an ash 6 in. di. brs. N. 45 E.; another ash brs. north; thence west 950⁴⁄₁₀ vrs. to a stake from which a hickory 7 in. di. brs. N. 75 W., another 6 in. di. brs. N. 80 W. Thence north, at 5 vrs. Shawnee creek, at 950⁴⁄₁₀ vrs. stake from which a hornbeam 4 in. di. brs. N. 35 E., a hickory 7 in. di. brs. north. Thence east 40 vrs. Shawnee creek, 950⁴⁄₁₀ vrs. a stake on Johnson's W. line from which a sweet gum 18 in. di. brs. S. 60 E. 8 vrs. dist. a post oak 15 in. di. brs. S. 60 W. Thence south with said west line 950⁴⁄₁₀ vrs. the place of beginning."

It is thus seen that the Leonard is tied to the Johnson, the west line of the Johnson being the east line of the Leonard.

In 1920, there was a suit in the district court of Angelina county, Tex., between Wm. Cameron & Co. and appellant G. B. Ruth and others to establish the west boundary line of the William Johnson, to which the Leonard was tied as its east boundary line. The testimony of Ruth in that case is in this record, and shows that he there testified that he did not claim any land west of the west boundary line of the Leonard, as fixed by its field notes on the bank of Shawnee creek. He testified that when he bought the Leonard he got a Mr. Duke, who was familiar with the land and knew where the corners of same were, to show them to him; that he went with Duke and looked at the line; that they went to the southeast corner on the Johnson west line, then to the southwest corner on or near Shawnee creek; that at that point they found the witness trees, two hickories called for, and crossed Shawnee creek five varas north from the corner as called for; that they then went north up the west line, crossing Shawnee creek several times, its meanderings being such that it crossed the line at various points, but that before reaching the northwest corner it bent to the east; that when they came to the northwest corner they found the witness trees—hornbeam and hickory—as called for in the field notes. He further testified in that trial that he got Dave Johnson, a surveyor, to survey the tract for him, and found the lines and corners as Duke had showed him, and that since he bought the land and had the corners and lines pointed out to him, he had been claiming from the west Johnson line back to Shawnee creek

—that that was as far west as he claimed. In the Cameron suit, Ruth was claiming that the west boundary line of the Johnson was further east than it was established by the judgment therein; he contended that the east boundary line of the Leonard, which was tied to the west boundary line of the Johnson, was 950.4 varas east of the northwest and southwest corners of the Leonard, as these corners were established, the southwest within 5 varas of Shawnee creek, and witnessed by two hickory trees, and the northwest within some 40 varas west of said creek and witnessed by a hornbeam and a hickory. The judgment in that case established the west line of the Johnson some 210 varas further west than Ruth contended, and hence the distance from that line as thus established to the northwest and southwest corners of the Leonard as established and called for in the field notes, the one within 5 varas of Shawnee creek and the other within some 40 varas west of said creek, was only about 745 varas.

After this judgment was rendered against Ruth for that portion of the Leonard which extended from the true west line of the Johnson as was determined in that suit east to the said line as Ruth then claimed, he brought suit against W. D. Cleveland, the party from whom he purchased the Leonard, on his warranty, and recovered judgment for the land thus lost in said suit, which amounted to 35¾ acres. All this is shown by the record herein. The judgment in the instant case, in describing section 9, gives the call for the north line of the Leonard, as extending from the Leonard northeast corner on the Johnson, west 745 varas to the northwest corner of the Leonard, giving the original call for said corner and its witness trees (hornbeam and hickory) as is made in the original field notes of the Leonard by which it was patented. This leaves the Leonard in the form of a rectangle 950.4 varas north and south by 745 varas east and west. This would contain 125.4 acres, which, with the 35¾ acres that was lost off of the east side in the Cameron suit and for which appellant was fully paid, makes the full complement called for in the original survey of the tract.

Appellant, Ruth, did not testify on this trial.

The field notes of section 9 read:

"Beginning at the orig. north cor. of J. E. Culpepper's Sur. from which a S. G. 10" brs. S. 72° W. 16 vrs. a R. O. 12" N. 87½° W. 7⅝ vrs. (old Brs. standing both dead).

"Thence N. 2° W. at 395 vrs. a branch, 527 vrs. to orig. L. C. r. this Sur. a R. O. 12" N. 20° E. 7 vrs. pin O. 10" S. 55° W. 4 vrs.

"Thence east 164 vrs. to orig. cor. this Sur. a P. O. 10" vrs. N. 20° W. 7 vrs. a pin. O. 8" S. 77° W. 5⅘ vrs. a S. G. 13" S. ½ E. 8½ vrs.

"Thence north at 307 vrs. pass an orig. cor. of this Sur. 665 vrs. to N. W. cor. this sur. (no brgs.).

"Thence east 1,749 vrs. to Jno. Pates' west line.

"Thence S. ¼ W. 229 vrs. to orig. S. W. cor. of Jno. Pates' sur. a pin O. 16" brs. east 6⅖ vrs. do. 8 N. 76° W. 5 vrs.

"Thence east at 115 vrs. slough 465 vrs. orig. S. E. cor. of Pate on west line of Johnson Sur. a S. G. 8 S. 55° W. 1 vr. do. 8 N. 55° E. 8 vrs.

"Thence south at 274 vrs. branch east 382 vrs. to orig. N. E. cor. of J. Leonard Sur. a S. G. 20" S. 60° E. 8 vrs. a P. O. 18 S. 60° W. 10⅗ vrs.

"Thence west 950 vrs. Leonard's N. W. cor.

"Thence south 950 vrs. Leonard's S. W. cor.

"Thence west 10 vrs. N. W. cor. of No. 8.

"Thence south 1067 vrs. to S. E. cor.

"Thence west 784 vrs. to east cor. of D. Denney a pin O. 20" S. 51° W. 18 vrs. do. 18" N. 59° W. 21 vrs.

"Thence N. 60 W. 300 vrs. to orig. south cor. of J. E. Culpepper a O. 7" 82¼ W. 6⅖ vrs. do. 6" N. 69° W. 6⅖ vrs. (both old brgs., but dead).

"Thence N. 30° E. 937 vrs. to Culpepper's N. E. cor.

"Thence N. 60° W. 950 vrs. to the place of beginning.

"Bearings mkd. $\overline{\text{X} \cdot \text{X}}$"

[1] It will be observed that section 9 calls to extend around the Leonard on the north and west. The Leonard is an older survey than section 9, and was actually surveyed and marked upon the ground. The lines of a survey as actually marked upon the ground, if they can be found and traced and can be identified as the same called for in the grant, will control course and distance. Anderson v. Stamps, 19 Tex. 460. The field notes of the Leonard as called for in the patent show the southwest corner of same to be south of and within 5 varas of Shawnee creek and witnessed by two hickory trees. These are found upon the ground as called for. The northwest corner is called to be 950.4 varas north from this point, witnessed by a hornbeam and a hickory, and some 40 varas from Shawnee creek. At this point the hickory is still standing, and the creek is near. These two corners and natural objects witnessing them are as called for in the patent, and the line connecting them is, therefore, the true west line of the Leonard. Bolton v. Lann, 16 Tex. 96, 113. This is the line contended for by appellee. If appellant's contention should be sustained, the west line of the Leonard would be located 210 varas west of this, and without any of the natural or artificial objects called for in the original field notes to witness its corners. The map in the record offered by appellant does not show Shawnee creek nor any of the witness trees called for, but, to the contrary, calls for two pin oaks at the southwest corner instead of the two hickories, and also for two pin oaks at the northwest corner instead of a hornbeam and a hickory. The Leonard, as delineated on this map, does not correspond with the description of same in the patent. But appellant says that the location of

the west line of the Leonard is immaterial—that appellee's pleading only raises the issue of the true location of its own land, section 9, insisting: (1) That the call in the patent to section 9 for the north line of the Leonard from its established northeast corner on the Johnson west 950 varas to its northwest corner places the east line of section 9 as contended by appellant; and (2) that the corner of section 8 called for is 10 varas west from the southwest corner of the Leonard as contended by appellant, and not 220 varas west as shown by appellee—that these and other calls in the patent of section 9 locate it where appellant contends, not where appellee contends.

[2, 3] It is true that in trespass to try title the burden is upon the plaintiff to show the location of his land, but when the field notes of the land sued for call for the lines and corners of older and well known surveys, well identified, these lines and corners must be recognized and adhered to as against lines or corners that may appear upon the ground which are not called for, or which are in conflict with the calls of the older survey. Hord v. Olivari (Tex. Sup.) 5 S. W. 57; Hord v. Rivas (Tex. Sup.) 6 S. W. 183. It is clear that under this well-established rule, where a junior survey is undertaken to be established and located by calls for the corners and lines of older and well-established surveys, it must be made to conform to, coincide with, and harmonize with the lines and calls of the older surveys, and that any erroneous calls of the junior or locative survey cannot be made to control or change the location of the older surveys, especially when the older survey contains in its own calls elements of complete description and identity. Under such circumstances, the junior survey must be located by the older and not the older by the junior. So, in the instant case, any discrepancies or mistaken calls for distance in the location of section 9 will not operate to render the grant void or to change the location of either the older surveys for the lines or corners of which calls are made in the field notes of section 9, but the calls in section 9 will be made to conform to and will be controlled by the calls for the established and identified corners of the older surveys.

Appellant contends that "it was plaintiff's burden, under its pleading, to show title to the strip of land lying east of where section 9 is located, and, according to its contention, west of where the Leonard is located, but, according to appellant's contention, being a part of the Leonard," and having failed to show title to same, in that it did not show same to be included in section 9, appellant was entitled to judgment, and the judgment should be reversed and here rendered for him.

[4] Appellee brought suit for the land embraced within section 9, and it is conceded that appellant is the owner of the Leonard. As before stated, the contest is as to the true location of the west line of the Leonard, the field notes of section 9 calling for that line as the east line of section 9. If we correctly understand appellant's contention, it is, first, that the Leonard extends 210 varas further west than located by the judgment, thus including what he calls the "strip" of land in contest; and, second, that if this is not true, then that section 9 does not reach to the west line of the Leonard as established along Shawnee creek, but that there is a strip of land 210 varas wide between section 9 and the Leonard to which appellee is not entitled because not embraced within section 9. In other words, that the surveyor, in locating the east line of section 9, did not tie to the west line of the Leonard, but that there is a strip of land between the two surveys, and, appellee having failed to meet the burden of proof showing the east line of section 9 to coincide with the west line of the Leonard, therefore appellee was not entitled to judgment. We do not believe that either of these contentions can be sustained. In the first place, we think the west line of the Leonard is undisputably established as contended by appellee—the southwest corner within 5 varas of Shawnee creek, with two hickories as witness trees, and the northwest corner 950.4 varas north, near Shawnee creek, with a hornbeam and a hickory for witness trees. So that a strip 210 varas wide west of this line could not be and was not included in the Leonard. In the second place, the record discloses that section 9 is practically surrounded by older surveys—the Leonard and Johnson on the east, the Pate on the northeast, the Culpepper on the west, and the Denney on the southwest. We think it manifest that the state, in locating section 9 and issuing patent therefor, intended to embrace therein all the territory located between these older surveys, and especially that north and west of the Leonard. This is shown by the fact that the field notes of section 9 call for the corners, lines, and witness trees of these tracts in its contact with them. A glance at the map and a reading of the field notes of these surveys amply establishes this. The rules for the construction of grants and for ascertaining their boundaries are all designed to carry out the intention of the grantor, and when that intention is manifest all else must yield to and be governed by it. Woods v. Robinson, 58 Tex. 655.

[5] A call for corners of older surveys established, on the ground when the survey which calls for them was made, will control a call for distance. Woods v. Robinson, supra. Where a survey calls, as does section 9, for the lines and corners of older adjacent grants, which lines and corners are established and identified, the boundaries of such survey must be determined by the calls for

the previous adjacent grants and by lines so run, disregarding both course and distance, if necessary, as to embrace within them all the land lying between the adjacent surveys called for in the patent as constituting the outer boundaries of the grant. Woods v. Robinson, 58 Tex. 655, 661. The location of the Leonard, Johnson, Pate, Culpepper, and Denney, the older surveys, being definitely known and established, and it being the intent of the grantor, the state, to include in the survey of the land granted, section 9, all the land between and embraced by the older surveys, this intent will control, and the making of wrong or conflicting calls, either as to course or distance, will neither defeat the grant nor prevent same from containing all the land intended to be conveyed.

[6] Furthermore, we think that the contention of appellee that sections 8 and 9, in locating and preparing field notes of same, were not surveyed on the ground, but that they were office surveys, their lines and corners being called for in connection with the lines and corners of the older well-established adjacent surveys, is correct. We will not go into a lengthy statement or discussion of the facts developed on the trial as to many of the lines and corners, but after a careful consideration of the record, state that it is apparent that the surveyor who made the field notes of sections 8 and 9, as contained in the patents, did not actually "make his footprints" in attempting to locate same. Discrepancies and errors or mistakes in some of the calls, and the many corners called for without witness trees, although from the record it is apparent that the whole land was well wooded, and the calls for the corners of old adjacent surveys with their witness trees as called for in their field notes, and the failure to call for Shawnee creek, which is shown to have been one of the largest creeks in the county, although it must have been crossed several times in running lines as called for, we think show this conclusively. The intention of the surveyor who located section 9 must prevail. Therefore, if he intended to include the land north and west of the Leonard, as it was the evident intent of the state that he should do, then the survey must conform to his intention, and if he made a mistake in assuming the north and south lines of the Leonard to be 950.4 varas, without measuring them, or if an erroneous measurement was made, such a mistake cannot prevail against the intent of the grantor apparent on the face of the grant. Lilly v. Blum, 70 Tex. 704, 6 S. W. 279. The surveyor who located section 9, in whatever way the location was made, could not disregard the natural and artificial objects that located the southwest and northwest corners of the Leonard, and if he made a mistake in assuming that the north and south lines of

the Leonard were 950.4 varas, instead of 745 varas, then the mistake must be disregarded, and the location of section 9 remain where the adjoining surveys that are well established and identified call for it to be. Moore v. Reiley, 68 Tex. 668, 5 S. W. 618; Lilly v. Blum, 70 Tex. 704, 6 S. W. 279; Stafford v. King, 30 Tex. 257, 94 Am. Dec. 304; Finberg v. Gilbert, 104 Tex. 539, 546, 547, 141 S. W. 82. Moreover, the northeast, northwest, and southwest corners of the Leonard are special locative calls, particular objects upon the lines and corners of section 9, intended to indicate the precise boundaries separating the Leonard and section 9, and these corners being definitely ascertained and located upon the ground, and it clearly appearing that the grantor, the state, intended to include in its grant of section 9 all the land north and west of the Leonard, and that the surveyor in locating section 9 intended that the west line of the Leonard and the east line of section 9 should be a common line, we conclude that there was no question of fact to be submitted to the jury, and that the court did not err in directing a verdict for appellee, and therefore the judgment should be affirmed, and it is so ordered.

Affirmed.